IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN PIERCE LANKFORD, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | Case No. 3:14-cv-2320 |
| BILL HOLT,[1] | ) ) | Chief Judge Sharp |
| Respondent. | ) ) | |

**MEMORANDUM OPINION**

John Pierce Lankford has filed a petition for the writ of habeas corpus under 28 U.S.C. § 2254, seeking to vacate a judgment and sentence entered in August 2013. Before the Court is the respondent's motion to dismiss the petition without prejudice for failure to exhaust state remedies (ECF No. 45), and numerous motions filed by the petitioner. For the reasons set forth herein, the habeas corpus petition will be denied on the merits and dismissed with prejudice, and all other pending motions denied as moot.

**I.   DISTRICT COURT PROCEDURAL BACKGROUND**

Petitioner John Pierce Lankford, a prisoner in state custody at the Robertson County Detention Facility in Springfield, Tennessee, instituted this action on or around November 25, 2014 by filing a petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Case No. 3:14-cv-2312, ECF No. 1), and then an amended petition (Case No. 3:14-cv-2320, ECF No. 6) challenging his conviction in the Circuit Court for Sumner County, Tennessee and requesting the appointment of counsel.[2] After the petitioner paid the filing fee, the Court entered an initial order construing the petition as stating colorable claims for habeas relief, directing service of process on the petitioner's custodian and the Tennessee Attorney General's Office, ordering the respondent to respond to the motion within thirty days, and denying the petitioner's request for appointment of counsel. (ECF No. 9.)

---

[1] Bill Holt, in his capacity as Robertson County Sheriff, has been substituted as the respondent in this action, as he is the state officer having custody of the petitioner.

[2] As a result of confusing filings on the part of the petitioner, the petitioner's amended petition was filed under a different case number than his original petition. The cases have been consolidated and are proceeding under the docket number reflected above (No 3:14-cv-2320). Unless otherwise noted, the documents referenced by ECF number were filed in Case No. 3:14-cv-2320.

Before and since entry of the initial order, the petitioner has bombarded the Court with motions and letters addressed variously to the undersigned personally, to the Clerk of Court, and to the *pro se* staff attorneys, primarily requesting that the Court consider documents submitted by the petitioner or demanding an order requiring the state to provide the petitioner with copies of portions of the underlying criminal court record, requesting that the Court provide the petitioner with copies of documents, or complaining about the jail's failure to provide the petitioner with copies of documents. (*See* ECF Nos. 1, 6, 33, (motions); ECF Nos. 5, 7, 17, 21, 22, 25, 26, 31, 34, 35, 43, 44, 50, 51 (letters).) In addition, the petitioner has filed four separate documents entitled "Circumstances Raised for the Appointment of Counsel" (ECF Nos. 18, 19, 20, 24) and two "Petitions for Counsel" (ECF No. 29, 30), which the Court construes as renewed motions for the appointment of counsel. On February 13, 2015, the petitioner filed a Petition to Amend Legal Action, seeking to sanction the Robertson County Detention Facility for failing to provide copies or access to a law library and legal materials, and attaching various documents related to the underlying criminal case. (ECF No. 41.)

On March 6, the respondent filed his motion to dismiss for failure to exhaust and supporting memorandum. (ECF Nos. 45, 46.) Pursuant to Court order, the respondent subsequently submitted exhibits that were intended to have been filed with the motion to dismiss but were erroneously omitted. (ECF No. 48.)

The petitioner then filed a "Motion to Proceed with Writ of Habeas Corpus 2254 due to Full Exhaustion of State Remedies" (ECF No. 54), which the Court construes as a response in opposition to the respondent's motion to dismiss. The petitioner also filed a motion for a hearing (ECF No. 55) and two motions to service notice (ECF Nos. 56, 57), requesting that the Court serve notice of this action on the Hendersonville, Tennessee Police Department and Hendersonville City Attorney John Bradley.

## II.    STATE COURT PROCEDURAL BACKGROUND

According to Lankford's amended petition, the "date of judgment of conviction" on the underlying criminal charges was October 20, 2014. (ECF No. 6, at 1.) In fact, based on the documentation submitted with his petition, it appears that a hearing was conducted on October 20, 2014 at which the petitioner was found guilty of violating the terms of his probation. The order adjudging him guilty of probation violation was entered on November 14, 2014. (ECF No. 6, at 33.) Pursuant to that order, the petitioner's sentence

in case number 2013-CR-21 of six years at thirty percent was imposed, with jail credits from September 9, 2013 through the date of the order. (*Id.*)

The underlying six-year sentence was issued on August 9, 2013. (See Judgment, ECF No. 6, at 26.) It is actually this judgment the petitioner challenges. In his habeas petition, the petitioner indicates that he pleaded guilty to the charge of aggravated assault but claims that his guilty plea was entered "under duress." (ECF No. 6, at 1.) By "duress" he apparently means that he pleaded guilty despite disputing the prosecutor's version of the facts, because he understood that the terms of the plea agreement would permit him to go home immediately to care for his aged father. He claims that the terms of the plea agreement were misrepresented to him. (*Id.* at 2.)

In fact, the documents submitted by the petitioner, including the judgments (ECF No. 41, 8–11) and the transcript of the plea and sentencing proceedings (ECF No. 41, at 7–27), show that the petitioner pleaded guilty in case number 2012-CR-762 to three charges of simple assault, for which he was sentenced to time served, and also pleaded guilty in case number 2013-CR-21 to one charge of aggravated assault, for which he received a sentence of six years as a standard offender (at 30%), suspended to one year of supervised probation with the balance to be served on unsupervised probation. (ECF No. 34, at 3–6 (judgments).) However, the suspension of the sentence was expressly contingent on the petitioner's compliance with the terms of his probation, which included refraining from the possession or consumption of alcohol and submission to weekly blood, breath, and/or urine screens. (*Id.*; *see also* Plea Hr'g Tr., ECF No. 41, at 10 (assistant attorney general's summary of plea agreement).) And the period of unsupervised probation was contingent upon successful completion of the period of supervised probation. (*Id.*)

The petitioner agreed to these terms in open court and clearly manifested his understanding that his probation was contingent on his refraining from consuming alcohol and on submitting to regular screenings to insure his compliance with that restriction:

> MR. LASSISTER [defense counsel]: You're pleading to Counts 2, 3, and 4 [in Case No. 2012-CR-762]. They're all simple assaults, and you're receiving 11/29 at 75 percent.
>
> THE DEFENDANT: Yes, sir.
>
> * * *
>
> MR. LASSITER: . . . . You're receiving a time-served sentence.

>THE DEFENDANT: Yes, sir.
>
>MR. LASSITER: And you'll be released today.
>
>THE DEFENDANT: Yes, sir.
>
>MR. LASSITER: And you're also pleading on case [2013-CR-21] to agg. assault, receiving a six-year sentence, do you understand?
>
>THE DEFENDANT: I understand.
>
>MR. LASSITER: You're going to be on supervised probation for a period of one year.
>
>THE DEFENDANT: Right.
>
>MR. LASSITER: And it'll be on State probation, but you will be supervised by Community Corrections. Amber McCrory is here today with them. You'll be reporting once a week and you will be – have to take breath tests and I think perhaps urinalysis tests.
>
>THE DEFENDANT: I understand.
>
>\* \* \*
>
>MR. LASSITER: Okay. He's giving up a lot today, Judge, to plea, and he understands that he's got to give up alcohol.
>
>\* \* \*
>
>THE COURT: The main thing I'm concerned about is, you understand all of this and you're ready to do it. I know you're ready to get out of jail. *If you don't get off that alcohol, you're going to be right back with us.* I've taken a liking to you way back when you wanted to run for office or something.
>
>THE DEFENDANT: Well, I wanted to get my rights restored. I've abandoned –
>
>THE COURT: You're a right likable little fellow, except when you drink.
>
>THE DEFENDANT: I know. I know that, Your Honor.
>
>THE COURT: And that's the one thing, if you don't overcome that –
>
>THE DEFENDANT: It's not as easy as –
>
>THE COURT: Well, give it your best shot.
>
>THE DEFENDANT: I will.

(Plea Hr'g Tr. 11:14–16:18, ECF No. 41, at 17–22 (emphasis added).) The plea was accepted on August 9, 2013, and the judgments were entered that day.

Documents submitted by the petitioner also show that less than a month later, on September 6, 2013, the petitioner's case officer swore out an affidavit of violation of community corrections based on the petitioner's being found in possession of alcohol and refusing to submit to a blood-alcohol test, as required by the probation order. (ECF No. 41, at 59.) The petitioner was arrested and subsequently found

guilty of the probation violation at a hearing conducted on October 20, 2014. As a result, his suspended six-year prison sentence went into effect.

In his habeas petition, in response to the question of whether he appealed the judgment, the petitioner checked "yes," but there is no evidence that he filed a direct appeal of his original conviction or sentence, or that he appealed the finding that he had violated probation. Instead, he filed a petition for post-conviction relief on March 19, 2014, in which he challenged his original conviction for aggravated assault and six-year sentence on the basis that he was innocent of the charge, was a victim of malicious prosecution and prosecutorial misconduct, and had entered a plea under duress and as a result of coercion and deception. (ECF No. 48-1.) The petition was summarily dismissed without a hearing on March 28, 2014. (ECF No. 6, at 39.) The petitioner states that he appealed that decision to the Tennessee Supreme Court, but that his appeal was not given a case number and "no results [were] rendered." (*Id.*) He purportedly requested a hearing but "the Court refuses to respond." (*Id.* at 3.) The petitioner does not allege and submits no evidence to suggest that he properly filed a notice of appeal of the order denying relief in the post-conviction court.

### III.    THE PRESENT PETITION

In the present action, the petitioner asserts the following claims for relief:

(1) violation of his rights under the Fourth Amendment when the police entered his home and seized his property without a warrant or permission;

(2) violation of the Fourth Amendment[3] when the police used excessive force in retaliation for his requesting the return of his seized property after he was out on bond;

(3) prosecutorial misconduct, insofar as the prosecutor knowingly made false statements about the evidence in the record;

(4) the plea was coerced and given under duress;

(5) the sentence was excessive and violated state law;

(6) the terms of the petitioner's sentence violated the Twenty-First Amendment as it prohibited the petitioner from possessing alcohol; and

(7) malicious prosecution.

(ECF No. 6, at 5–11, 23.) The petitioner seeks to have his sentence vacated and his freedom restored. He also demands monetary compensation for "pain, suffering and mental anguish" (ECF No. 6, at 14) and

---

[3] The petitioner actually invokes the Eighth Amendment, but the Court broadly construes the allegations to state a claim under the Fourth Amendment.

other relief not available in a habeas action.

**IV.     STANDARD OF REVIEW**

The petition in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). As the Supreme Court recently explained, AEDPA "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. ----, 134 S. Ct. 10, 15 (2013). AEDPA, therefore, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.* One of AEDPA's most significant limitations on the federal courts' authority to issue writs of habeas corpus is found in 28 U.S.C. § 2254(d). That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Habeas courts review the "last explained state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original).

Perhaps even more formidable, however, is the barrier to relief for prisoners whose claims have *not* been properly exhausted before the state courts or were procedurally barred by the state courts. Such claims are barred from habeas review except in very limited circumstances.

> *A.     Exhaustion*

28 U.S.C. § 2254(b)(1) provides that a federal court may not award habeas relief to an applicant in state custody "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State," "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). Exhaustion occurs once a petitioner has "give[n] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).[1] If under state law there remains a remedy that a petitioner has not yet pursued, exhaustion has not occurred, and the federal habeas court cannot entertain the merits of the claim. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

When a habeas court finds a claim to be unexhausted, it can, for good cause, stay the action and permit the petitioner to present his unexhausted claim to state court and then return to federal court for review of his perfected petition. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). The court need not wait for exhaustion, however, if it determines that a return to state court would be futile. *See id.* ("[E]ven if a petitioner had good cause for that failure [to exhaust claims in state court], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless."); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

  **B.**   *Procedural Default*

Even where a state prisoner has exhausted available state-court remedies, a federal court may not consider "contentions of federal law which are not resolved on the merits in the state proceeding due to [the petitioner's] failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). If a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To be independent, the state court's decision must not "appear[] to rest primarily on federal law, or to be interwoven with the federal law." *Id.* at 735 (citation and quotation marks omitted). To be adequate, a state procedural rule generally must be "'firmly established and regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60 (2009). And finally, if a petitioner failed to fairly present a particular federal habeas claim to

---

[1] In many states, full exhaustion requires presentation of a claim to the state supreme court. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) ("The exhaustion requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."). In Tennessee, review by the state supreme court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

the state courts but has no remaining avenue available for doing so, then the claim is deemed to be exhausted but procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. at 848; *Rust v. Zent*, 17 F.3d at 160. In that situation as well, a federal court may excuse the default and consider a defaulted claim on the merits only if the petitioner demonstrates that (1) there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error, or (2) a fundamental miscarriage of justice would result from a bar on federal habeas review. *Coleman*, 501 U.S. at 750.

**V.     ANALYSIS**

The respondent has filed a motion to dismiss the petitioner's claims without prejudice, for failure to exhaust, under 28 U.S.C. § 2254(b)(1)(A). (ECF No. 45.) The petitioner responds, arguing that he has fully exhausted his claims. (ECF No. 54.)

Under Tennessee law, the petitioner had one year from the date his judgment became final to file a state post-conviction petition. Tenn. Code Ann. § 40-30-102(a). The judgment was entered on August 9, 2013 and became final on Monday, September 9, 2013, the last day upon which the petitioner could have filed a notice of appeal. Tenn. R. App. P. 4(a) (judgment becomes final thirty days after entry unless a timely notice of appeal or a specified post-trial motion is filed); *see also State v. Green*, 106 S.W.3d 646, 650 (Tenn. 2003) (holding under Tennessee law that "a judgment of conviction entered upon a guilty plea becomes final thirty days after acceptance of the plea agreement and imposition of sentence").

The petitioner's state post-conviction petition, filed on March 19, 2014, was therefore timely under state law. To preserve his claims for review in this Court, however, the petitioner was required to properly "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). In Tennessee, that meant he needed to appeal to the Tennessee Court of Criminal Appeals. *See Adams v. Holland*, 330 F.3d 398, 401 (6th Cir. 2003) ("By its terms, Rule 39 dictates that once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" (quoting Tenn. S. Ct. R. 39)).

Nothing in the record indicates that the petitioner filed a proper notice of appeal. *See* Tenn. R. App. P. 3(e) ("An appeal as of right . . . shall be taken by timely filing a notice of appeal with the clerk of the trial court as provided in rule 4 and by service of the notice of appeal as provided in rule 5."); Tenn. R. App. P. 4(a) (a notice of appeal must be received by the clerk of the trial court within thirty days after entry

of the judgment appealed from); Tenn. R. App. P. 5(b) ("In criminal actions, when the defendant is the appellant . . . , the defendant shall serve a copy of the notice of appeal on the District Attorney General of the county in which the judgment was entered and on the Attorney General at the Attorney General's Nashville, Tennessee office.").[4]

Because the petitioner did not appeal the denial of his initial petition for post-conviction relief, the petitioner's claims have not been fully exhausted. Moreover, because the time for pursuing a direct appeal has long-since expired, the claims appear to be procedurally defaulted and, consequently, barred from review in this Court. However, no state court has expressly determined that the claims are defaulted under state procedural rules, and there is at least a theoretical possibility that the state appellate courts could permit the petitioner to pursue a delayed appeal. The Court presumes that the respondent's decision to move for the dismissal of this action *without* prejudice is based on this remote possibility.[5]

The petitioner appears to argue that he has done everything he can to attempt to appeal the trial court's decision but that the courts will not respond to his efforts. He indicates that he is ignorant of the law and suggests that he should be deemed to have fully exhausted his remedies based on his ignorance of the law and the state courts' failure to respond or provide guidance as to how he should have gone about pursuing a proper appeal.

Notwithstanding the petitioner's claims of ignorance of the law, the Court finds as set forth below that the habeas petition in this case should be dismissed on the merits, with prejudice, on the basis that it states claims that are not cognizable on habeas review or are patently without merit. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

---

[4] The petitioner instead appears to have filed a "Motion for Hearing" in the state court. (*See* ECF No. 6, at 36.) The copy of the motion filed in this Court does not include a signature page or a certificate of service showing when or to whom it was served, and it was apparently not construed by the trial court as a notice of appeal.

[5] The Court also notes that the one-year statute of limitations at 28 U.S.C. § 2244(d)(1)(A) for filing a federal habeas petition expired on October 20, 2014, more than a month before the petitioner filed his petition in this Court, even assuming that the limitations period was tolled for forty-one days while the petitioner pursued his post-conviction action in the state court. Because the respondent did not raise the issue of the statute of limitations and because there is a remote possibility that the petitioner could obtain leave from the Tennessee courts to pursue a delayed appeal, the Court declines to dismiss the petition on the basis that it is barred by the statute of limitations.

### A.     Fourth Amendment Claims, Prosecutorial Misconduct, and Duress

The petitioner claims that his rights under the Fourth Amendment were violated when Sumner County police entered his home and seized his property without a warrant or permission. He also alleges that his Fourth Amendment rights were violated because the officers used excessive force when they seized him when his bond was revoked. These events apparently occurred in 2012. (*See* Plea Hr'g Tr., ECF No. 41, at 11–13.)[6]

The petitioner's Fourth Amendment claims are barred for at least two reasons. First, Fourth Amendment claims are not cognizable on habeas review when, as here, the state provided an opportunity for full and fair litigation of the claims. *Stone v. Powell*, 428 U.S. 465, 481–82, 494–95 (1976). Second, the petitioner waived review of the claims when he pleaded guilty. *United States v. Broce*, 488 U.S. 563, 569 (1989); *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001); *State v. McKissack*, 917 S.W.2d 714, 716 (Tenn. Ct. Crim. App. 1995) ("A plea of guilty, which is entered voluntarily, knowingly, and intelligently, waives all prior non-jurisdictional, procedural, and constitutional defects in the proceedings.").

The petitioner, by arguing that he entered the plea under "duress," that he was "coerced" and "misled" into entering the plea, and that he was actually innocent of the aggravated-assault charge to which he pleaded guilty, is apparently attempting to assert a claim that his plea was not voluntary. A plea is valid if it is entered voluntarily and intelligently as determined under the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 749 (1970). The constitution requires the circumstances to reflect that the defendant was informed of all the direct consequences of his plea. *Id.* A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charges against him. *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13 (1976).

The petitioner here alleges that the prosecutor misrepresented the evidence to the state trial court. For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the

---

[6] To the extent the alleged Fourth Amendment violations occurred outside the context of the conviction that is the subject of this petition, they are not cognizable on habeas review, though they could potentially be raised in a separate proceeding under 42 U.S.C. § 1983.

resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

In this case, the petitioner's factual allegations, even if true, do not establish that the plea was not knowingly and voluntarily entered, because the petitioner was aware of the alleged misrepresentations of the facts that supported the charges against him at the time he entered the plea. He expressly waived his factual objections when he pleaded guilty to the underlying charges.

He asserts that the plea was coerced and entered under duress. These claims appear to be based on the trial court's or the prosecutor's purported misrepresentation of what the sentence would be if he pleaded guilty. These claims are patently without merit. The plea transcript shows that the petitioner was sentenced to one year of supervised probation subject to strict limitations on his ability to consume or possess alcohol and a requirement that he undergo weekly screening tests to ensure compliance with that restriction. The remaining five years were to unsupervised, but only if the petitioner successfully completed one year of supervised release. The petitioner began to serve the probationary sentence but he lasted less than a month.[7] The petitioner acknowledged on the record that violation of the terms of his probation would land him in prison. The petitioner has not presented any *new* evidence of prosecutorial misconduct that was unavailable to him at the time he entered the plea agreement. Any claims based on information in his possession at the time he entered his plea was waived by the entry of the plea. He is not entitled to relief on the basis of these claims either.

Thus, because the petitioner cannot establish that his plea was involuntary, his Fourth Amendment claims, of which he had knowledge at the time he entered the plea, are likewise waived.

### B. Excessive Sentence

The petitioner has not presented any factual or legal support for his claim that a six-year sentence for aggravated assault, to be served at 30%, is excessive under state law. Moreover, this claim does not assert a violation of federal constitutional law—it asserts a state-law violation. Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under

---

[7] The Court may question the wisdom of putting the petitioner, a known alcoholic, on probation whose terms restricted him from consuming alcohol, apparently without providing him with tools to assist him in overcoming that addiction, but that issue is not before the Court.

§ 2254. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *cf. Bridinger v. Berghuis*, 429 F. Supp. 2d 903, 908 (E.D. Mich. 2006) ("As a general matter, a habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings."). The petitioner is not entitled to relief on the basis of this claim.

### C.     Twenty-First Amendment

The petitioner's claim that the terms of his probation violated the Twenty-First Amendment because they prohibited the petitioner from possessing alcohol is frivolous and does not state a claim that is cognizable on habeas review.[8] *See Granholm v. Heald*, 544 U.S. 460, 486, 493 (2005) (noting that the states "have broad power to regulate liquor under § 2 of the Twenty-First Amendment"). *Fillingim v. Boone*, 835 F.2d 1389 (11th Cir. 1988) (rejecting habeas claim based on allegation that local ordinance violated 21st Amendment). The petitioner is not entitled to relief on the basis of this claim.

### D.     Malicious Prosecution

The petitioner's malicious-prosecution charge is addressed to the order revoking probation. *See* ECF No. 6, at 24 (complaining that the judge's statement in the order revoking probation that a probation violation warrant was served on the petitioner on September 11, 2013 was "totally erroneous" because it actually charged violation of Community Corrections only, and other complaints about the order). Under Tennessee law, a post-conviction petition may not be used to challenge a revocation of probation, because an order revoking probation merely ends the probation term, imposes no new sentence, and accordingly is not an action that may be challenged via Tennessee's post-conviction procedure. *Young v. State*, 101 S.W.3d 430, 432–33 (Tenn. Ct. Crim. App. 2002); *see also Carpenter v. State*, 136 S.W.3d 608, 611–12 (Tenn. 2004) (distinguishing between revocation of probation and revocation of community corrections).[9] The appropriate vehicle for challenging the revocation of probation would have been to file a direct appeal of that order, *see* Tenn. R. App. P. 3(b), within thirty days after the order was entered, Tenn. R. App. P. 4(a), which the petitioner failed to do. The Court therefore finds that any claims related

---

[8] The Twenty-First Amendment repealed the Eighteenth Amendment and prohibits the interstate transportation of alcohol in violation of state law. It did not create a personal right to possess alcohol.

[9] In the petitioner's case, he was sentenced to state probation, with the probation to be administered by community corrections. When the probation was revoked, the initial sentence was imposed. The petitioner was not sentenced to a term of community corrections under the Tennessee Community Corrections Act, Tenn. Code Ann. § 40-36-101 *et seq.*

to the revocation of probation are procedurally defaulted and barred from review by this Court.

## VI.     CONCLUSION

For the reasons set forth herein, the respondent's motion to dismiss this action without prejudice will be denied, and the Court will instead dismiss the action on the merits, with prejudice. All of the petitioner's pending motions will be denied as moot.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

Under the standard articulated in *Miller-El*, the Court finds that none of the claims raised in Mr. Lankford's petition merits further review. A COA will not issue.

An appropriate order is filed herewith.

_____
KEVIN H. SHARP
Chief Judge
United States District Court